AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>MATTHEW JASON KROTH,<br> aka Jason Kroth,<br> aka Speedy,<br><br>Defendant | Case No.  2:23-mj-00328-DUTY |

LODGED
CLERK, U.S. DISTRICT COURT
1/25/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___VAV___ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
1/25/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___jm___ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

As described in the accompanying attachment, defendant violated the following statutes:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(B) | Possession with Intent to Distribute Controlled Substances |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Mark O'Donnell
Complainant's signature

Mark O'Donnell, Detective
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  1/25/2023

Judge's signature

City and state:  Los Angeles, California

Hon. Michael R. Wilner, U.S. Magistrate Judge
Printed name and title

AUSA Andrew Brown, 11th Floor, x0102

**Complaint Attachment**

<u>21 U.S.C. §§ 841(a)(1), (b)(1)(B)</u>

    Beginning on an unknown date, and continuing through at least January 24, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant MATTHEW JASON KROTH, aka Jason Kroth, aka Speedy, knowingly and intentionally possessed with intent to distribute more than 50 grams, that is approximately 120 grams, of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance.

## AFFIDAVIT

I, Detective Mark O'Donnell, being duly sworn, hereby depose and state as follows:

### I. TRAINING AND EXPERIENCE

1. I am a sworn police officer for the Los Angeles Police Department (LAPD), currently assigned to Operations-Valley Bureau Homicide as a detective supervisor. I have been employed by the LAPD since June 1996. I have been a detective since 2005. In my current assignment, I am tasked with supervising a team of detectives, who investigate all manner of deaths within the Bureau, including murder. Prior to my assignment as a supervisor, I was a homicide investigator for thirteen years. I have participated in the investigations of hundreds of homicides, which have resulted in the arrests and convictions of dozens of individuals for murder, manslaughter, and kidnaping. These investigations often revealed various motives, including financial gain. I have authored countless search warrants to financial institutions to show the flow of money to various co-conspirators. I have worked with experienced detectives from the LAPD Forgery and Financial Crimes Sections, who have assisted me in understanding complex financial crimes. Prior to this assignment, I have been assigned to investigate robberies,

burglaries, thefts, and forgeries.

2.   I am familiar with the facts and circumstances described herein.  This affidavit is based upon my personal involvement in this investigation, my training and experience, and information obtained from various law enforcement personnel and witnesses, including information that has been reported to me either directly or indirectly.  This affidavit does not purport to set forth my complete knowledge or understanding of the facts related to this investigation.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.  All figures, times, and calculations set forth herein are approximate.

II. **SUMMARY AND PURPOSE OF AFFIDAVIT: COMPLAINT**

3.   This affidavit is made in support of a complaint against MATTHEW JASON KROTH, aka Jason Kroth, aka Speedy ("KROTH") for violation of 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Controlled Substances).

A. Summary of Investigation

4.   The Los Angeles Police Department and the United States Postal Inspection Service are conducting an investigation of KROTH for his involvement in schemes to steal real properties through identity theft, in which a bank account in his name and

his co-conspirator, Caroline Herrling received $950,000 from the fraudulent sale of a property using false California Driver Licenses and false notarized documents. It was also reported that KROTH and Herrling were involved in the looting of the estate of a deceased person named June Wilding and her deceased son, Charles Wilding.

   B. <u>KROTH has an Extensive Criminal History and was on Probation with Search Conditions</u>

      5.  On January 23, 2022, I re-reviewed KROTH's criminal history, which shows that has been convicted of multiple crimes stemming back to 1991. I saw that KROTH still had an outstanding bench warrant for absconding from his state court hearing while on bail. I also saw that KROTH was on formal probation with the state of California with a search condition. The terms of his probation state KROTH was to "Submit [his] person and property to search and seizure at any time of the day or night, by any probation officer or other peace officer, with or without a warrant, probable cause or reasonable suspicion." I also learned the KROTH's girlfriend, Kara Corodimas ("Corodimas") was also under formal probation with search conditions.

   C. <u>KROTH Lived in a Motel with Pregnant Girlfriend who was also on Probation</u>

      6.  On January 23, 2023, I learned from a hotel employee at the Studio City Court Yard Hotel ("Court Yard Hotel") that

KROTH and a woman rented a hotel room under a different name. The employee stated that KROTH and the woman (later identified as Corodimas) had been living there for six months and had already paid for additional stays in advance. The employee stated that notwithstanding that the room was booked under a different name, it was KROTH who paid for it and KROTH and the woman (Corodimas) who stayed there. The hotel employee also told me that KROTH drove several vehicles including a late model Gray Chevy Silverado ("KROTH's Truck"). The employee stated that the employee had personally seen KROTH using that truck multiple times as recently as yesterday.

D. KROTH Arrested and Searched, Drugs and Ammunition Found

7. On January 24, 2023, Postal Inspector Versoza and I conducted surveillance at the Court Yard Hotel and observed KROTH's Truck in the parking lot. I also watched the door to his motel room ("KROTH's Hotel Room"), which was observable from the street, and saw KROTH receive an Uber Eats delivery from the doorway to his motel room. Inspector Versoza went to the parking lot see KROTH's Truck, and observed KROTH and a friend arranging things in KROTH's Truck. We approached and arrested KROTH for his outstanding warrants. KROTH possessed in his pocket the keys to KROTH's Truck. At the time, KROTH admitted that he was staying in his room (KROTH's Hotel Room) with his girlfriend, and that KROTH's Truck was his.

8.     Inspector Versoza told me that he knocked on the door to KROTH's Hotel Room.  Corodimas opened the door.  She admitted that she was on probation and had a search condition.  She also admitted that that she and KROTH had been staying in KROTH's Hotel Room for months, and that KROTH had been driving KROTH's Truck for several weeks.  When Inspector Versoza asked if there were drugs in the room, Corodimas stated that she was three months pregnant and did not use drugs.  She said that any drugs found in the room would belong to KROTH.  Inspector Versoza could see into KROTH's Hotel Room, which was full of merchandise, pizza boxes, and documents; he said it looked like persons had been living in it long-term, and were not concerned about keeping up appearances.  In his training and experience, the variety of merchandise stuffed in KROTH's Hotel Room was consistent with what mail thieves and residential burglars would accumulate from their crimes.  Law enforcement officers conducted a probation search of KROTH's Hotel Room and found the following evidence, among other items:

    a.     Scattered in pouches and bags around the room were bags of crystalline substances. On January 25, 2023, Inspector Versoza told me that Postal Inspectors used a Tru-Narc handheld analyzer which determined this substance to be methamphetamine.  Inspector Versoza told me that combined, the methamphetamine weighed 129 gross grams;

      b.    Psybicilin which was later weighed at about 10 gross grams;

      c.    Black tar substances that tested positive for opioids (likely black tar heroin) which was weighed at 10 gross grams;

      d.    Weighing scales with drug residue on the scales;

      e.    Stacks of small baggies, the kinds often used in drug sales;

      f.    243 grams of a white powder substance in a black plastic bag.  Inspector Versoza told me that this was tested with tru-narc, which indicated it was cornstarch.  I know that drug dealers often use cornstarch as a cutting material to increase the quantity of the drugs they sell;

      g.    Found in Cordimas's purse were stacks of $100 and $50 bills.  Inspector Versoza said that this cash was later counted in his office and totaled $10,050;

      h.    Evidence of fraud, including stolen mail and financial documents;

      i.    Scattered around the room but not seized were random items that appear to have been stolen from homes, like small sculptures, art, and gemstones; and

      j.    Also observed was a box for a gun safe.

    9.    Law enforcement also conducted a probation search of KROTH's Truck and found in his vehicle, among other evidence,

the following:

    a.   Documents related to June and Charles Wilding;

    b.   Ammunition, which was hidden behind the back seat of his truck; and

    c.   Stolen Mail.

  E.  <u>KROTH Admitted to Selling Drugs and Committing Fraud</u>

    10.  After the search, Inspector Versoza told me he asked Corodimas if the drugs recovered belonged to her, and she said they did not. She confirmed that she stayed at the hotel only with KROTH, but hesitated to say the drugs belonged to KROTH. Corodimas reiterated that she did not do drugs due to her pregnancy and being on probation. Corodimas claimed the cash belonged to her and was given to her by her ex-boyfriend, who she said had inherited money. Inspector Versoza told her that given all the drugs in the room and the weighing scales, the cash appeared to be proceeds of drug sales. Corodimas admitted that it does appear that way, but claimed again her ex-boyfriend inherited money and gave it to her.

    11.  On January 24, 2023, KROTH was booked at LAPD for three outstanding state warrants. After he was booked, Inspector Versoza and I interviewed him at the LAPD interview room, which was recorded. Prior to the interview, Inspector Versoza read KROTH his rights per Miranda, which KROTH waived. During this interview, KROTH stated that the drugs found in KROTH's Hotel

Room were meth, and belonged to him.  He also admitted to selling drugs, usually ounces at a time.  He acknowledged having been in and out of prison most of his adult life.  KROTH said he was an "urban explorer," which he said meant that he targeted and burglarized homes in affluent neighborhoods.  He described a time where he said he broke into the house of Charles Wilding and found his body decomposing.  He stole jewelry and other valuables from the Wilding residence.  He also said that he and others jointly looted the estate and bank accounts tied to Wilding.  KROTH said he profited $140,000 from looting the Wilding accounts.  KROTH also said he committed a real estate fraud on another individual named Robert Tascon, where I know from bank records that a joint account in the names of KROFT and Herrling (who was previously arrested for this scheme and was ordered detained by Magistrate Judge Donahue) was used to receive the funds from the sale of the property.  He said he profited $100,000 from that scheme.  KROTH also admitted to breaking into Herrling's residences after law enforcement executed search warrants at her residences.

F. <u>KROTH's Phone Search Revealed Coded Messages about Drug Sales and Discussions of a Gun</u>

12. After the interview, Inspector Versoza asked KROTH if he would give me consent to search his digital devices. KROTH agreed and signed an LAPD Consent to Search Form.

13. Inspector Versoza told me he reviewed KROTH's Phone

and found:

    a.    Texts about fencing stolen jewelry;

    b.    A text message from a number that was not saved on his phone, on January 24, 2023, at around the time KROTH was already in custody, warning KROTH to flee as the police were coming for him: "Hey your friend said they are coming get out of dodge. Just relaying you the message. Hope you're ok"

    c.    Coded messages about drug sales including:

     i. To KROTH: "Speedy [KROTH] pick up that two that you needed I have it"

    ii. To KROTH "I have 24 I'm sitting on"

   iii. To KROTH "you got any blk"

    d.    A message that KROTH sent about a gun: I'm coming to get tat gun"

///

## III. **CONCLUSION**

14. For the reasons stated above, there is probable cause to believe that MATTHEW JASON KROTH violated 21 U.S.C. § 841(a)(1).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __25__ day of January, 2023.

_____ MRW
UNITED STATES MAGISTRATE JUDGE